IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:25-CV-00200-KDB-SCR

| | |
|---|---|
| PHYLLIS MICHAUX, <br><br> Plaintiff, <br><br> v. <br><br> MANN+HUMMEL FILTRATION TECHNOLOGY, <br><br> Defendant. | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss (Doc. No. 4) the various Title VII employment discrimination and other claims Plaintiff has asserted against it. The Court has carefully considered this motion, and the parties' briefs and exhibits. For the reasons discussed below, the Court will in part **GRANT** and in part **DENY** the motion.

I.     **LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The Court, however, accepts all well-pled facts as true and draws all reasonable inferences in Plaintiff's favor.

1

*See Conner v. Cleveland Cty., N. Carolina*, No. 19-2012, 2022 WL 53977, at *1 (4th Cir. Jan. 5, 2022); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

In so doing, the Court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Pa. Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc.*, 932 F.3d 268, 274 (4th Cir. 2019). Construing the facts in this manner, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Pledger v. Lynch*, 5 F.4th 511, 520 (4th Cir. 2021) (quoting *Ashcroft*, 556 U.S. at 678). Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

When deciding a motion to dismiss, "a court considers the pleadings and any materials 'attached or incorporated into the complaint.'" *Fitzgerald Fruit Farms LLC v. Aseptia, Inc.*, 527 F. Supp. 3d 790, 796 (E.D.N.C. 2019) (quoting *E.I. du Pont de Nemours & Co.,* 637 F.3d at 448). The Court may also consider documents attached to a motion to dismiss when they are "integral and explicitly relied on in the Complaint," and where "plaintiffs do not challenge [the document's] authenticity."[1] *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606-7 (4th Cir. 2015).

Further, this Court is required to liberally construe pro se complaints, which are held to a less stringent standard than those drafted by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). Nonetheless, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*,

---

[1] The Court finds the EEOC Charge of Discrimination to be integral to and referenced in Michaux's Complaint, and neither party has contested its authenticity.

901 F.2d 387 (4th Cir. 1990); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions").

## II. FACTS AND PROCEDURAL HISTORY

Plaintiff Phyllis Michaux is a former Catalog Research Analyst at Mann+Hummel Filtration Technology ("M+H"). She alleges that she was the only African American member of her team. Doc. Nos. 1 at 11; 1-6 at 2. During her tenure, Michaux received at least three performance evaluations, each assigning her an overall performance rating. Doc. No. 1-6 at 5. For calendar year 2021, Michaux was classified as "meets expectations."[2] *Id.* In both 2022 and 2023, she was classified as "partially meets expectations." *Id.*

Michaux contends that during her employment, she contacted Human Resources ("HR") to report that her manager "excluded from [her] team's meetings and social gatherings," while her Caucasian colleagues were included. Doc. No. 5-1 at 2. In addition, she reported that "despite greater tenure and experience than [her] non-African American colleagues," she was "repeatedly" denied promotions in favor of "less-experienced Caucasian" colleagues, and that tasks she considered "favorable" were reassigned to a Caucasian colleague. *Id.* However, her performance evaluation stated that due to an "overwhelming" workload, her duties were adjusted to allow her to "thrive in her old role as the off-highway SME," Doc. No. 1-6 at 12, and she reported that her manager encouraged her to apply for a "Customer Service Manager" position, though Michaux does not state whether she applied. Doc. No. 1 at 11–12.

Michaux additionally claims that HR "refused to take remedial action," in response to her complaints, attributing this to "retaliatory animus against [her] race and protected complaints." *Id.*

---

[2] M+H has four classifications for an employee's overall performance: (1) below expectations, (2) partially meets expectations, (3) meets expectations, and (4) exceeds expectations. *See* Doc. No. 6-1 at 5.

However, she also alleges that her manager was subsequently demoted due to his "poor leadership." Doc. No. 1 at 5. In addition, Michaux contends that her 2023 performance evaluation, which she received in January 2024, was "deliberately poor" and "pretextual," and that her manager "did not perform the correct procedure" when issuing it. Doc. Nos. 1 at 11; 5-1 at 3. Yet, as noted, her overall performance rating for the year was "partially meets expectations," which is identical to her rating for the previous year (and which she does not allege to be discriminatory). *See* Doc. No. 1-6 at 5. Michaux also asserts that employees were "allowed to receive a minimum 3% pay increase," but that she and another African American female employee received only a 1% raise.[3] Doc. No. 1 at 5.

Separately, Michaux contends that another colleague told her that her manager characterized her as "angry" and "aggressive;" which Michaux believes shows that her manager was stereotyping her in a "racially motivated" manner. Doc. No. 5-1 at 2. In February 2024, HR contacted Michaux regarding an "anonymous complaint" about harassment within her department. Doc. Nos. 1 at 4; 1-4 at 2. In her Charge, she states the complaint was about her. Doc. No. 5-1 at 3. In early March 2024, approximately two weeks after responding to HR's inquiries–including whether she had herself experienced harassment or retaliation–Michaux was placed on a performance improvement plan ("PIP"), which she claims was retaliatory. *Id.* However, elsewhere, Michaux states that the PIP was related to her productivity and work-related research methods. Doc. No. 1 at 5. Finally, Michaux alleges that despite complying with the PIP's directives and her manager verbally telling her that her PIP performance was "sufficient," she was terminated in April 2024. *Id.* at 5, 10.

---

[3] Michaux alleges elsewhere that she only received a 1.5% raise. Doc. No. 1 at 11.

Following her termination, Michaux filed a Charge of Discrimination with the EEOC in May 2024. Doc. No. 5-1. On March 20, 2025, after receiving a Right to Sue letter from the EEOC, Michaux filed her Complaint, alleging discrimination based on her race, age, color, and religion, as well as retaliation, harassment, favoritism, failure to promote, wrongful termination, defamation of character, and a "COVID-19 violation." Doc No. 1 at 3, 10-14.

## III.   DISCUSSION

"Before a plaintiff has standing to file suit under Title VII, [s]he must exhaust h[er] administrative remedies by filing a charge with the EEOC." *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 383–84 (4th Cir. 2022) (quoting *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002)). *See also Patterson v. McLean Credit Union,* 491 U.S. 164, 181 (1989), *superseded on other grounds by* 42 U.S.C. § 1981(b). "The exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Id.* at 384 (quoting *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005)). Failure to exhaust administrative remedies generally precludes suit or bars the specific claim. *See*, *e.g.*, *Miles,* 429 F.3d at 491; *Bryant*, 288 F.3d at 132.

This requirement also serves to limit the scope of the federal action to those claims and parties identified in the administrative charge. *See* 42 U.S.C. § 2000e–5(f)(1); *Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 593–94 (4th Cir. 2012). Therefore, "when the claims in [a Plaintiff's] court complaint are broader than 'the allegation of a discrete act or acts in [the] administrative charge,' they are procedurally barred." *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 306 (4th Cir. 2019) (quoting *Chacko v. Patuxent Inst.*, 429 F.3d 505, 508–10 (4th Cir. 2005)).

The Fourth Circuit has consistently held that a "claim will ... typically be barred if the administrative charge alleges one type of discrimination—such as discriminatory failure to

5

promote—and the claim encompasses another type—such as discrimination in pay and benefits." *Wooten v. Univ. of Maryland, Baltimore*, 733 F. Supp. 3d 402, 424 (D. Md. 2024) (quoting *Nnadozie v. Genesis HealthCare Corp.*, 730 F. App'x 151, 161 (4th Cir. 2018)) (citations omitted). *See also Sydnor,* 681 F.3d at 593–94 (explaining that a plaintiff fails to exhaust their administrative remedies where a charge alleges racial discrimination, but the complaint includes sex discrimination, and where a charge alleges retaliation, but the complaint includes racial discrimination); *Sloop v. Mem'l Mission Hosp., Inc.,* 198 F.3d 147, 149 (4th Cir. 1999) (Title VII retaliation claim barred when administrative charges alleged only age discrimination).

"Nevertheless, an EEOC charge does not strictly limit a ... suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination. *Wooten v. Univ. of Maryland, Baltimore*, 733 F. Supp. 3d 402, 424 (D. Md. 2024) (quoting *Miles,* 429 F.3d at 491) (citations omitted). Recognizing that "EEOC charges often are not completed by lawyers, the Fourth Circuit has instructed courts to construe them with utmost liberality." *Id.* (quoting *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013)) (internal quotations and citations omitted). Accordingly, "a federal court may hear a claim that was not presented to the EEOC so long as it is 'reasonably related' to the plaintiff's EEOC charge 'and can be expected to follow from a reasonable administrative investigation ....'" *Id.* (quoting *Sydnor*, 681 F.3d at 594) (citations omitted). Even so, the Fourth Circuit has yet to establish a brightline rule "for deciding when a reasonable relation exists."[4] *Id.* (additional citations omitted).

---

[4] Although no clear rule exists, several Fourth Circuit decisions are illustrative. For example, the Fourth Circuit has found exhaustion "where both the administrative complaint and formal litigation concerned "discriminat[ion] in promotions" but involved different aspects of the "promotional system," *Sydnor*, 681 F.3d at 594 (quoting *Chisholm v. U.S. Postal Serv.,* 665 F.2d

6

Case 3:25-cv-00200-KDB-SCR     Document 20     Filed 10/09/25     Page 6 of 15

With this framework in mind, the Court will consider Michaux's numerous claims against M+H, which include retaliation, wrongful termination, harassment, race discrimination, age discrimination, favoritism, religious discrimination, failure to promote, defamation of character, and a "COVID-19 violation." At the outset, in her Charge of Discrimination (the "Charge"), Michaux alleged only race discrimination and retaliation. *See* Doc. No. 5-1 at 2. Applying the Fourth Circuit's guidance on the "reasonably related," doctrine, the Court concludes that Michaux's claims of age discrimination, religious discrimination and harassment are not reasonably related to the allegations in her Charge and will therefore be dismissed for failure to exhaust administrative remedies. In addition, to the extent that M+H believes that Michaux asserted a claim for color discrimination by checking a box on a complaint template without providing supporting facts (and which Michaux did not suggest she was alleging in her Response to the Motion to Dismiss), the Court finds the claim has not been properly raised, thus, there is no claim to dismiss.

**<u>Discrimination</u>**

With respect to the remaining claims, Michaux first alleges that M+H discriminated against her based on her race when she and another African American female received about a third of the raise that non-African American employees received. Michaux also claims that she was excluded from meetings and social gatherings, passed over for promotions, retaliated against, and terminated.

"Title VII prohibits an employer from 'discharg[ing] any individual, or otherwise ... discriminat[ing] against any individual with respect to his compensation, terms, conditions, or

---

482, 491 (4th Cir. 1981)). Similarly, it has found exhaustion "where both the EEOC charge and the complaint included claims of retaliation by the same actor but involved different retaliatory conduct." *Id.* (citing *Smith v. First Union Nat. Bank*, 202 F.3d 234, 248 (4th Cir. 2000)).

privileges of employment, because of such individual's race." *Coleman,* 626 F.3d at 190 (quoting 42 U.S.C.A. § 2000e–2(a)). A plaintiff is "not required to plead a prima facie case of discrimination under Title VII to survive a motion to dismiss." *Felder v. MGM Nat'l Harbor, LLC*, No. 20-2373, 2022 WL 2871905, at *1 (4th Cir. July 21, 2022) (quoting *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 584–85 (4th Cir. 2015)).

"Instead, a plaintiff must allege sufficient facts to satisfy the elements of a cause of action created by [the applicable] statute." *Id.* (quoting *McCleary-Evans*, 780 F.3d at 585) (internal quotation marks omitted). This includes demonstrating "some adverse employment action." *Id.* (quoting *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007)). "An adverse employment action is a discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's employment." *Id.* (quoting *Holland,* 487 F.3d at 219) (cleaned up). Examples of an adverse employment action include a "decrease in compensation, job title, level of responsibility, or opportunity for promotion." *Id.* (quoting *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 376 (4th Cir. 2004)). Accordingly, a plaintiff need only "plausibly allege that [an adverse action was taken] '*because of*' her race, color, or religion] … to withstand a motion to dismiss." *Id.* (internal quotation marks and citations omitted).

Although Michaux's 2023 performance evaluation identified that she only "partially [met] expectations," Michaux claims that HR told her "everyone was to receive [a raise of] no less than 3%," but both she and another African American female employee only received 1%. Taken together these allegations permit the reasonable inference that the deviation from the "standard" raise was not explained by performance alone but may be attributable to discriminatory intent. Thus, taking Michaux's statements as true, as the Court must on a motion to dismiss, the Court finds that Michaux has plausibly alleged an adverse employment action because of her race.

*Favoritism*

Michaux also alleges that she "reported several acts of … favoritism," which she found "unethical." Doc. No, 1 at 12. She claims she was excluded from social gatherings, Doc. No. 5-1 at 2–3, and that others received "work trips" and "upgraded office equipment." Doc. No. 1 at 12. In addition, the "acts" included giving Michaux less work, allowing others to work "at their preference, spend excessive time in the smoke area, and talk/non-work 80% of the time in an 8-hour workday." Doc. No. 1 at 12. To be sure, Michaux appears to have spent a substantial amount of time observing and documenting what her colleagues did and did not do at work each day. *See* Doc. Nos. 1-1, 1-2, 1-3, 1-4, 1-5, 1-6.

"[F]avoritism alone does not constitute actionable discrimination." *Sherman v. Westinghouse Savannah River Co.*, 263 F. App'x 357, 363 (4th Cir. 2008). Indeed, while unfair, favoritism "is not violative of Title VII in the absence of improper discriminatory intent." *Adams v. Giant Food, Inc.*, 225 F. Supp. 2d 600, 605 (D. Md. 2002) (citing *Nichols v. Comcast Cablevision of Maryland,* 84 F. Supp. 2d 642, 655 (D. Md. 2000)) (citations omitted).

Though it is apparent that Michaux felt excluded from various meetings and social interactions, she fails to allege that she did not receive any of the benefits that she claims were provided to her colleagues. Moreover, Michaux has not alleged that any of her manager's (or colleagues') actions were *because* of her race or any other protected factor. Therefore, because Michaux has failed to "move the needle from speculative possibility to sufficient plausibility," the favoritism claim will be dismissed. *Samulski v. W Int'l SC LLC*, No. 2:24-CV-00583-DCN, 2024 WL 4380111, at *6 (D.S.C. Oct. 3, 2024).

*Failure to Promote*

Next, Michaux alleges that M+H failed to promote her because she is African American. Again, it is unlawful under Title VII "for an employer ... to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Under that provision, it is unlawful for an employer to not promote an employee for racially discriminatory reasons. *See, e.g., Carter v. Ball*, 33 F.3d 450, 458 (4th Cir. 1994).

Michaux alleges that she was "repeatedly denied promotions," in favor of her Caucasian colleagues, despite having greater tenure and experience than they did, although she fails to allege any specific position she applied for, and which was awarded to an employee outside the protected class. Indeed, she claims only that three of her non-African American colleagues were "promoted to other positions, but there was never a formal Team meeting to explain why or inform us of their tasks." Doc. Nos. 1 at 13; 5 at 2.

M+H contends the Court should dismiss the claim, because Michaux failed to allege that she was in a protected class and that her Caucasian colleagues were outside the class. In support, it cites *Montgomery v. Anson County Bd. of Educ.*, 2016 WL 6139933, at *2 (W.D.N.C. Oct. 20, 2016), which dismissed a failure to promote claim where the plaintiff similarly failed to allege any specific position that she applied for, and which was awarded to a less-qualified candidate outside of her protected class. However, at the pleading stage, a pro se complaint must be liberally construed under the plausibility standard articulated in *Iqbal* and *Twombly,* and comparative allegations of promotions to less experienced, Caucasian employees–as is the claim here–can suffice to make a claim plausible. *See Iqbal*, 556 U.S. at 676–79; *Twombly*, 550 U.S. at 556.

Accordingly, the Court finds that Michaux has plausibly alleged a discriminatory failure to promote.

**<u>Retaliation and Wrongful Termination</u>**

Michaux further contends that M+H retaliated against her when it placed her on a PIP and subsequently terminated her after she made complaints to HR about her manager.[5]

A Title VII retaliation claim "may survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)" even if the complaint does not allege facts sufficient to establish a prima facie case under the *McDonnell Douglas* framework. *Barbour v. Garland*, 105 F.4th 579, 590 (4th Cir. 2024) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002)). Because the *McDonnell Douglas* framework is an "evidentiary standard" and "not a pleading requirement," it is not required that a complaint "contain such facts; rather, the ordinary rules apply and the complaint … need [only contain] a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* (first quoting *Swierkiewicz,* 534 U.S. at 508–510, and then quoting Fed. R. Civ. P. 8(a)(2)) (internal quotations omitted). Further, because the *McDonnell Douglas* framework does not apply in every employment discrimination case "it is not appropriate [at the Motion to Dismiss stage] to require a plaintiff to plead facts establishing a prima facie case" under *McDonnell Douglas*. *Id.* (quoting *Swierkiewicz,* 534 U.S. at 511).

Thus, in order to adequately plead a Title VII retaliation claim, the complaint must "allege[ ] facts supporting a plausible inference that [the employer took an adverse employment action against the plaintiff] 'because' of [the plaintiff's] protected activity." *Barbour,* 105 F.4th at 590

---

[5] Although Michaux pleads wrongful termination as an individual claim, she alleges that she was terminated out of anger and after making a protected complaint about her manager to HR. Thus, it appears that she is alleging termination as one of several retaliatory acts she believes occurred. Accordingly, the Court will consider them together.

(citing *Holloway v. Maryland*, 32 F.4th 293, 300 (4th Cir. 2022)). *See Kitlinski v. United States Dep't of Justice*, 994 F.3d 224, 232 (4th Cir. 2021) ("To succeed on their retaliation claims [including wrongful termination], the plaintiffs must show that (1) [they] engaged in a protected activity; (2) the employer acted adversely against [them]; and (3) there was a causal connection between the protected activity and the asserted adverse action.")). *See also* 42 U.S.C. § 2000e-3(a). Put another way, to survive dismissal the Complaint must plausibly link the protected activity and the adverse action such that a retaliatory motive is a reasonable inference.

As noted, Michaux complained to HR and others that her manager was discriminating against her by not promoting her, favoring others, and excluding her from meetings and social gatherings. While Michaux has not alleged when she first complained to HR about her manager, in January 2024, Michaux claims her manager gave her a "deliberately poor" performance evaluation, which he left visible on her desk for two weeks while she was on vacation. Doc. No. 1 at 5. Then, in February 2024, HR contacted Michaux to investigate "complaints" against her.[6] Doc. No. 5-1 at 3. During that investigation, she again reported her manager for "disparate treatment" and alleges the company failed to take any "remedial or corrective action."[7] *Id.* Instead, two weeks later, Michaux was placed on a PIP before being terminated shortly thereafter.

However, Michaux also provides documentation that her overall performance rating of "partially meets expectations" in 2023 was unchanged from the previous year, and she does not allege that the 2022 rating was retaliatory. Notwithstanding the 2022 and 2023 performance evaluations, Michaux was not placed on a PIP until March 2024, approximately two weeks after

---

[6] Confusingly, Michaux claims in her Complaint that the "anonymous" complaint was "against the company," but in her Charge, seemingly admits that the complaint was about her ("complaints had been levied against me."). Doc. Nos. 1 at 4; 5-1 at 3.

[7] As noted, Michaux also alleges that her former manager was subsequently "demoted due to his poor leadership."

12

HR investigated the complaint against her. Finally, in April 2024, after having been on the PIP for only a month, Michaux claims her manager told her the PIP would be lifted for adequate performance, but she was instead terminated.

While the Court finds Michaux has not plausibly alleged that her performance evaluation itself was retaliatory, the temporal proximity between the HR investigation (where Michaux made a protected complaint against her manager), the placement on a PIP, and Michaux's rapid termination thereafter–despite allegedly adequate job performance–permit an inference of retaliatory causation. Accordingly, the Court will allow the retaliation and wrongful termination claims to proceed.

**Defamation of Character**

Michaux also alleges that M+H has allowed her former manager to "scandalize and slander her name through ['untrue'] third-party, documented statements." Doc. No. 1 at 13. Specifically, she claims that an unnamed person "scandalize[d her] character" by stating that Michaux "made threats to kill my coworkers and [that] I was seeing demons." Doc. No. 1 at 8. While Michaux doesn't explicitly allege that her manager made the statements, the Court will infer that he did based on Michaux's reference to her manager "scandaliz[ing]" her. Further, Michaux claims the statements are "untrue," "sickening," and "horrendous," and they have caused her a "deep depression." Doc. No. 1 at 13.

In addition, Michaux alleges that her former manager told her colleague that she was "angry and aggressive," and that he made "comments about [her] being older." Doc. No. 1 at 11. Finally, she claims that she is being "black balled" to block her future employment and asks the Court to investigate and review one of the many attachments to her Complaint (although she fails

to identify the relevant attachment, and in any event, it is not the Court's role to scour through exhibits in search of a viable claim). *Id.*

In North Carolina, for a defamation claim to survive a motion to dismiss, "a plaintiff must allege that the defendant caused injury to the plaintiff's reputation 'by making false, defamatory statements of or concerning the plaintiff, which are published to a third person.'" *King v. Chaffin*, 759 F. Supp. 3d 690, 695 (W.D.N.C. 2024) (quoting *Boyce & Isley v. Cooper*, 153 N.C. App. 25, 29, 568 S.E.2d 893 (2002)). "Generally, a communication is deemed defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Cannon v. Peck*, 26 F.4th 547, 559 (4th Cir. 2022). The Court must consider "the full context of the statement, viewing the words 'within the four corners' of the publication and interpreting them 'as ordinary people would understand' them." *Hamilton v. French/W./Vaughan, LLC*, No. 5:24-CV-456-FL, 2025 WL 790630, at *4 (E.D.N.C. Mar. 12, 2025) (quoting *Renwick v. News & Observer Publ'g Co.*, 310 N.C. 312, 317, 319 (1984)).

"The Federal Rules of Civil Procedure do not prescribe a special pleading standard for libel or slander cases." *Moore v. Cox*, 341 F. Supp. 2d 570, 575 (M.D.N.C. 2004). Though some courts "follow a heightened pleading standard, the Fourth Circuit has joined with a growing number of courts in concluding that since the Federal Rules do not mandate a heightened pleading standard for defamation cases, the liberal pleading requirement of Rule 8(a) requiring only a short and plain statement showing the pleader is entitled to relief applies." *Id.* (citing *Wuchenich v. Shenandoah Mem'l Hosp.*, 215 F.3d 1324, 2000 WL 665633, at *14 (4th Cir.2000)) (*per curiam*).

However, even under Rule 8(a)'s liberal pleading standard, Michaux fails to allege the basic elements of a defamation claim. Specifically, although Michaux claims defamation related to comments about her age and temperament, she fails to allege that the statements were false, or

that they harmed her reputation in some way. Similarly, while statements that she was possessed by demons and wanted to kill her coworkers could, in theory, rise to the level of actionable defamation, Michaux fails to plead publication to a third party–an essential element of a defamation claim. Accordingly, the defamation claim will be dismissed.

**COVID-19 Violation**

Finally, Michaux alleges that M+H violated "North Carolina Labor Laws" by "forcing employees to pay $100.00 per month" for declining to get vaccinated against COVID-19. *See* Doc. No. 1 at 14. However, Michaux fails to explain which North Carolina law she believes M+H violated and similarly fails to allege more than her own belief that "the charges were extremely unnecessary." Doc. No. 1 at 14. Though she asks the Court to investigate her claim, Michaux misunderstands the role of the Court. "[I]t is not an investigative agency; rather it serves the limited role of adjudicating live cases and controversies that fall within its jurisdiction." *Jolly v. White*, No. CV CCB-20-2505, 2020 WL 13592931, at *1 (D. Md. Sept. 9, 2020). Accordingly, the Court will dismiss this claim.

I. ORDER

NOW THEREFORE IT IS ORDERED THAT:

1. Defendant's Motion to Dismiss (Doc. No. 4) is **GRANTED** in part and **DENIED** in part in accordance with this order; and

2. This case shall **proceed toward trial on the merits on the remaining claims** in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED ADJUDGED AND DECREED.**

Signed: October 9, 2025

Kenneth D. Bell
United States District Judge